NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0467n.06

Case No. 24-5334

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 16, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff-Appellee, | ) ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| DALTON SAMUEL BROOKS | ) | KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) ) | OPINION |

Before: NORRIS, MOORE, and READLER, Circuit Judges.

PER CURIAM. Dalton Samuel Brooks pleaded guilty to being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and possessing an unregistered short-barreled shotgun, 26 U.S.C. § 5861(d). At issue is whether § 922(g)(1) and § 5861(d) may be enforced against Brooks consistent with the Second Amendment. The answer is yes, so we affirm.

I.

On April 13, 2023, police officers in Maysville (Kentucky) received a tip that Dalton Brooks was cooking and selling methamphetamine and that he kept drugs in his red Ford. Shortly after, the officers spotted a red Ford in the parking lot of a Quality Inn. While surveilling the hotel, the officers saw Brooks get into the car and drive away. They pulled him over and conducted a search. The officers found an unregistered short-barreled 12-gauge shotgun, a double-barrel 12-gauge shotgun, methamphetamine, marijuana, a digital scale, a crossbow, and heroin. Brooks, it turns out, had multiple felony convictions under state law.

In June 2023, a federal grand jury charged Brooks with being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and possessing an unregistered short-barreled shotgun, 26 U.S.C. § 5861(d).  Brooks filed a motion to dismiss both charges.  He argued that § 922(g)(1) and § 5861(d) violated the Second Amendment on their faces and as applied to him.  The district court rejected Brooks's arguments and denied his motion.

Brooks thereafter pleaded guilty, preserving his right to appeal the district court's order denying his motion to dismiss his indictment.  The district court sentenced him to 57 months in prison.  Brooks appealed.

II.

When considering challenges to firearm regulations, we ask two questions:  (1) Does the Second Amendment's plain text cover the claimant's proposed course of conduct?  (2) If so, can the government, consistent with the principles that underpin our Nation's regulatory tradition, justify applying the regulations to him? *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17 (2022); *United States v. Rahimi*, 602 U.S. 680, 690–92 (2024).

*Felon in possession of a firearm*.  Brooks first argues that § 922(g)(1) is unconstitutional on its face and as applied to him.  We can make quick work of his facial challenge.  To succeed, Brooks must show that § 922(g)(1) cannot be applied in *any* circumstance.  *Rahimi*, 602 U.S. at 693.  Yet in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), we held that § 922(g)(1) is constitutional in many of its applications.  *Id.* at 657.  Thus, Brooks's facial challenge fails.

Brooks's as-applied challenge also fails.  In *Williams*, we held that § 922(g)(1) is constitutional as applied to "dangerous" persons.  *Id.* at 663.  In assessing whether Brooks is dangerous, we may examine his "criminal record." *Id.* at 659.  A person is presumptively dangerous if he has committed a crime "against the body of another human being" such as "assault"

2

or if he has committed a "crime that inherently poses a significant threat of danger" such as "drug trafficking." *Id.* at 663 (internal quotation marks omitted). Here, Brooks has been convicted of assault and drug trafficking under state law. That means he is presumptively dangerous, and he has not even attempted to show that he is *not* dangerous. *Id.* Nor, we note, could Brooks likely demonstrate that he is not dangerous in light of his convictions. *Id.* (explaining that a person convicted of assault or drug trafficking will have a "very difficult time" of "showing he is not dangerous"). In short, Brooks's as-applied challenge to § 922(g)(1) fails.

*Possession of an unregistered short-barrel shotgun.* Brooks next argues that § 5861(d) is unconstitutional on its face and as applied to him. We disagree. (Because we find that § 5861(d) can be applied to Brooks consistent with the Second Amendment, his facial challenge necessarily fails. *See Rahimi*, 602 U.S. at 693.

Section 5861(d) of Title 26, part of the National Firearms Act, prohibits individuals from possessing certain firearms that are not registered in the National Firearms Registration and Transfer Record. 26 U.S.C. § 5861(d). The term "firearm" includes a "shotgun having a barrel" "of less than 18 inches in length." *Id.* § 5845(a). That describes the shotgun Brooks had in his car when the officers arrested him. Thus, the question is whether the government may punish Brooks for possessing an unregistered, short-barreled shotgun.

Our recent decision in *United States v. Bridges*, 150 F.4th 517 (6th Cir. 2025), frames our inquiry. In *Bridges*, we applied the *Bruen* framework for the first time to a type-of-weapon challenge. 150 F.4th at 524–29. Bridges argued that the federal statute generally outlawing machinegun ownership, 18 U.S.C. 922(o), violated the Second Amendment. *Id.* at 519–20. We disagreed, holding that although machineguns are "Arms" presumptively protected by the Second Amendment, the government established that the statute had firm roots in our Nation's historical

tradition of banning the ownership of "dangerous and unusual weapons." *Id.* at 524–29. Brooks's challenge fits the same mold as Bridges's and suffers the same fate.

As in *Bridges*, the first question is, does the Second Amendment's plain text cover Brooks's proposed course of conduct? *Id.* at 524 (citing *Bruen*, 597 U.S. at 24). Yes. The Second Amendment, in relevant part, says that "the right of the people to keep and bear Arms[] shall not be infringed." U.S. CONST. amend. II. Brooks is a member of the people because he is an American citizen; and § 5861(d) infringes (burdens) his right to keep (possess) an arm (a short-barreled shotgun). *See Bridges*, 150 F.4th at 524.

The second question is, can the government, consistent with the historical limits of the Second Amendment, justify applying § 5861(d) to Brooks? We think yes. The government invokes the historical principle of banning guns that are "dangerous and unusual." In *Bridges*, we recognized that our Nation has a historical tradition of banning "dangerous and unusual weapons." 150 F.4th at 525 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008)).

We have no trouble concluding that short-barreled shotguns are dangerous and unusual. "An object is 'dangerous' if it is 'likely to cause serious bodily harm.'" *Id.* (quoting *Dangerous*, Black's Law Dictionary (12th ed. 2024)). Short-barreled shotguns plainly meet this definition.

Moving on, "we ask whether [short-barreled shotguns] are 'unusual.' For this inquiry, we focus on whether [short-barreled shotguns] are weapons that are 'in common use' or 'typically possessed by law-abiding citizens for lawful purposes' like 'self-defense.'" *Id.* at 525–26 (quoting *Heller*, 554 U.S. at 624–25). The Supreme Court has answered this question. In *United States v. Miller*, 307 U.S. 174 (1939), the Supreme Court upheld an indictment against two men charged with unlawfully transporting an unregistered short-barreled shotgun in violation of the National Firearms Act. *Id.* at 183. In so doing, the Supreme Court reasoned that the Second Amendment

4

does not protect "the right to keep and bear" a short-barreled shotgun. *Id.* at 178. In explaining why, the Supreme Court relied on founding-era history. It observed that men called to serve in the militia "were expected to appear bearing arms supplied by themselves and of the kind *in common use* at the time." *Id.* at 179 (emphasis added). Yet the parties in *Miller* had provided no evidence that short-barreled shotguns "were part of the ordinary military equipment" or "could contribute to the common defense." *Id.* at 178. Thus, in the Supreme Court's view, the Second Amendment did not guarantee a right to possess an unregistered, short-barreled shotgun, which was not in common use at the time of *Miller*.

In *Heller*, the Supreme Court clarified *Miller*'s holding. The specific question before the Supreme Court in *Heller* was whether the District of Columbia could, consistent with the Second Amendment, ban the possession of handguns in the home. *Id.* at 573. In the course of its analysis, the Supreme Court "read *Miller* to say" "that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *Heller*, 554 U.S. at 625. It found that this "limitation" on the right to bear arms was "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id.* at 627 (collecting historical sources). Because handguns are "the quintessential self-defense weapon," the Supreme Court held that the District of Columbia's ban on handguns violated the Second Amendment. *Id.* at 628–29.

Putting these pieces together, the Second Amendment does not guarantee the right to possess an unregistered gun that is dangerous and unusual. *Miller* said short-barreled shotguns are not in common use for lawful purposes. *Miller*, 307 U.S. at 178. *Heller* suggested the same. *Heller*, 554 U.S. at 625 ("We therefore read *Miller* to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes,

5

*such as short-barreled shotguns*.") (emphasis added); *cf. Bridges*, 150 F.4th at 524–29 (employing *Heller*'s framework to conclude machineguns are dangerous and unusual). Nothing in *Bruen* or *Rahimi* calls into question *Miller* or *Heller*. *See Bridges*, 150 F.4th at 520–21. And here, as in *Miller*, the parties have presented no evidence to suggest that short-barreled shotguns are typically possessed by law-abiding citizens for lawful purposes today. Indeed, as we recently explained in *Bridges*: "What puts weapons like short-barreled shotguns . . . beyond the Second Amendment's scope 'is their ability to inflict damage on a scale or in a manner disproportionate to the end of personal protection.'" 150 F.4th at 527 (quoting *Bianchi v. Brown*, 111 F.4th 438, 451 (4th Cir. 2024) (en banc), *cert. denied*, 145 S. Ct. 1534 (2025)). Put differently, unlike handguns, short-barreled shotguns are "excessively dangerous weapons ill-suited and disproportionate" for self-defense. *Id.* at 527–28 (quoting *Bianchi*, 111 F.4th at 452). Thus, short-barreled shotguns "are 'unusual' under *Heller*." *Id.* at 528.

Because "lower courts must follow Supreme Court precedent," *Thompson v. Marietta Educ. Ass'n*, 972 F.3d 809, 813 (6th Cir. 2020), we think the government may, consistent with the Second Amendment's historical scope, punish individuals for not registering short-barreled shotguns.

We are not the first court of appeals to confront arguments after *Bruen* and *Rahimi* that Congress cannot, consistent with the Second Amendment, require individuals to register short-barreled shotguns or rifles. Several of our sister circuits have recently rejected the same arguments that Brooks has raised here. And all of them have applied *Miller* and *Heller* to uphold convictions under § 5861(d) for possessing unregistered, short-barreled shotguns or rifles. *United States v. Rush*, 130 F.4th 633, 637–38 (7th Cir. 2025); *United States v. Robinson*, No. 23-12551, 2025 WL 870981, at *5 (11th Cir. Mar. 20, 2025) (per curiam); *United States v. Saleem*,

No. 23-4693, 2024 WL 5084523, at * 1 (4th Cir. Dec. 12, 2024) (per curiam).  We do the same today:  Section 5861(d) can be applied to Brooks.

*     *     *     *     *

We affirm the judgment of the district court.